BlaNd, Judge,
delivered the opinion of the court:
The invention involved in this appeal which is from the decision of the Board of Appeals of the United States Patent Office, affirming the Primary Examiner’s rejection of certain claims, relates to-a method of ink marking, underneath the covering or fell, of carcasses, particularly sheep carcasses.
Appellant has been granted two apparatus claims in patent No. 1,936,170, issued November 21, 1933. Separate application was filed in which claims for a method of marlring carcasses were presented.
The examiner rejected all the claims upon references, and rejected claims 2 and 3, which are involved in this appeal, upon the addi- *718 fcional ground that they called for only the function of a. particular device.
Upon appeal to the board, the examiner was reversed as to claim .1 in the application here involved and the claim was allowed. The board held that claims 2 and 3 were not anticipated by the prior art, but affirmed the action of the examiner in rejecting the claims and used the following language:
Claims 2 and 3 are additionally rejected as being drawn to the function of a particular device. We are not prepared to hold that claims of this nature should be rejected for that reason but we can find no patentable distinction between the subject matter of these elatins and that of claim 1 of appellant's patent 1,936,170. It is our opinion, therefore, that to allow claims 2 and 3 loould result in double patenting. [Italics ours]
Claim 1 of appellant’s said patent reads as follows:
1. A branding instrument comprising a plurality of needles arranged according to a cbosen design of brand mark and a support therefor, said needles being eacli provided with grooves and each baying- deeply recessed apertures adjacent their points terminating in said grooves, whereby to carry ink through a layer of fell.
The two claims rejected by the board, involved in this appeal, are as follows:
2. In the packing industry, the method of marking edible carcasses or parts thereof, having a surface covering such as fell or the like, which consists in perforating the surface covering or fell by means of an inked implement having penetrating portions with ink pockets formed in the sides thereof and depositing ink from said ink pockets in the tissue beneath the fell.
3. In the packing industry, the method of marking edible carcasses or parts thereof, having a surface covering such as fell or the like, which consists in perforating the surface covering of fell by means of an inked implement having penetrating portions with longitudinally disposed ink pockets formed in the sides thereof and depositing ink from said ink pockets in the tissue beneath the fell.
While appellant in oral argument stated that division was required by the Patent Office between the article claims and the method claims, it is conceded that the record before ns does not show this fact and that for the purposes of considering this case we may not regard division as having been required by the Patent Office so as to- bring before us a consideration of the applicability of our holdings in In re Cady, 22 C. C. P. A. (Patents) 1190, 77 F. (2d) 106 and In re Carlton, 22 C. C. P. A. (Patents) 1223, 77 F. (2d) 363.
It is conceded on both sides that the sole question for decision here is whether or not the board erred in rejecting the claims upon the ground that their allowance would result in double patenting because of the finding of the board that there was no patentable distinction between the subject matter of the two claims at bar and claim 1 of appellant’s said patent.
*719 It frequently happens that an inventor invents a method of doing a. thing and a machine or device for performing the steps of the method. Both may be inventive and he may properly be allowed claims covering both the apparatus and the method. For reasons which need not be discussed here, he should not have a'method claim, if the method is stated in terms which merely recite the performance of the machine, and the rule has been fairly well settled as to when a method claim, which method may be performed by a patented machine, may be allowable. This question was gone into thoroughly by this court in In re Ernst et al., 21 C. C. P. A. (Patents) 1235, 71 F. (2d) 169. Numerous authorities were there cited and considered, including In re Weston, 17 App. D. C. 431. We, in the Ernst case, quoted with approval the following definite rule which was laid down in the Weston case:
It seems to us from all these authorities the deductions to be drawn are these: First, that processes involving a chemical or other elemental action, if new and useful, are patentable; second, that a process, which amounts to no more than the mere function of a machine, is not patentable; third, that a process or method of a mechanical nature, not absolutely dependent upon a machine, although perhaps best illustrated by mechanism, may, if new and useful, be the proper subject of a patent, even though it involves no chemical or other elemental action.
We then said:
* * * It appears that appellants’ process is absolutely dependent upon a machine, or machines, for which appellants have been allowed apparatus claims, and each of the method claims here involved states a function, and nothing- more than a function, of the apparatus described in the allowed claims. * * *
In In re McCurdy, 22 C. C. P. A. (Patents) 1140, 76 F. (2d) 400, the issue was much the same as the one. at bar. We there cited several cases and followed our holding in In re Ernst et al, supra. We said:
We think it is well settled that the inventor of an apparatus may be allowed method claims if the method performed by the apparatus may' be performed by other apparatus or by hand. The mere fact that he has invented a machine for carrying out his process does not make him any the less an inventor of the process, provided the machine and process both are new and useful and otherwise meet the requirements of the statute. Bell, the inventor of the telephone, discovered that by gradually changing the intensity of a continuous electrical current so as to make it correspond exactly to the changes in the density of the air, caused by the sound of the voice, speech could be reproduced and understood, and he devised an instrument for doing it. He was the discoverer of the; underlying principle which his machine or device made serviceable to humanity. 1-Ie was the inventor of a method and also of a mechanism for performing the method. (See The Telephone Gases, 126 U. S. 1, at pages 532, 633).
From the various authorities considered we think the rule is well settled that under circumstances like those at bar, if the method *720 of the claims can be performed by any other apparatus or by hand, it cannot be said that the claims recite the mere function of a machine, so that their allowance would be double patenting. See Expanded Metal Co. v. Bradford, 214 U. S. 366; In re Tallmadge, 37 App. D. C. 590.
The important inquiry in determining the issue presented, therefore, is whether or not the method claims call for steps which can be performed only by the apparatus for which appellant was allowed said claim 1 of the patent.
In appellant’s application, concerning the method claims he states:
It may be noted, that in the practice of this invention the method used for applying the brand by whatever means is mainly to form a dot or preferably an agroupment or series of dots by injecting and depositing appropriate charges of ink beneath the surface of the meat or under the fell thereon, according to the chosen design. * * *
The board in the decision appealed from did not agree with the examiner’s finding that the method claims call for nothing more than the function of a particular device, nor is there any suggestion in the board’s opinion that the claims describe the function of the device. The board merely stated that it saw no' patentable distinction between the subject matter of the claims and that of claim 1 of appellant’s patent.
We see no reason why the steps of the method claims at bar could not be performed by hand or by apparatus other than that covered by the said patent claim. The steps involved in claim 2 of the instant application are (1) perforating the surface covering or fell by means of an inked implement having penetrating portions with ink pockets formed in the sides thereof and (2) depositing ink from said ink pockets in the tissue beneath the fell. It would be tenuous to urge that when the courts have spoken of performing by hand what may be performed by a machine they meant by hand alone, that is to say, without the use of some ordinary tool in common use. In the instant case, can it be contended that before appellant can perform by hand the act of perforating the surface covering and depositing ink, he must literally perforate the fell covering with his fingers or hands ? In carrying out the method of claims 2 and 3, he may take by hand “ an inked implement having penetrating portions ” which may not be an “ instrument comprising a plurality of needles arranged according to a chosen design of brand mark and a support therefor ” as is provided for in claim 1 of the patent.
It is true that both claims 2 and 3 qualify the inked implement used by specifying that the implement has ink pockets of a certain character. It is not difficult to conceive of a hand implement which might be used to brand carcasses by hand which had penetrating por *721 tions with ink pockets of the character described in the method claims and did not comprise the particular features called for in the patent claim.
We are not in accord with the views of the board that there was no patentable distinction between the subject matter of the claims at bar and said claim of appellant’s patent. Patentable new and useful results may flow from the performance of the method of the claims which are distinguishable from the subject matter of claim 1 of appellant’s patent. Certainly there is such doubt involved that under the well-settled rule, the applicant should have the advantage thereof.
The decision of the Board of Appeals appealed from as to said claims 2 and 3 is reversed.