Reversed.

27 C.C.P.A. (Patents)

### In re LAND.
### Patent Appeal No. 4240.

Court of Customs and Patent Appeals.
Feb. 5, 1940.

Donald L. Brown, of New York City (Brown & Jones, of New York City, of counsel), for appellant.

Howard S. Miller, of Washington, D. C., for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

Claims numbered 3, 8, 12, 13, 14, 15, 18, 21, 22, 23, 24, 25 and 26 in appellant's application for a patent for "Improvements in Systems Employing Polarized Light for the Elimination of Headlight Glare" were rejected by the Primary Examiner of the United States Patent Office and his decision

so rejecting them was affirmed by the Board of Appeals. From the decision of the latter, appeal has been taken here.

The instant appeal involves subject matter closely related to that in companion appeal No. 4241 which was argued with the instant appeal. In the argument, appellant's counsel conceded that the issues raised in considering claims 22, 23, 24, 25 and 26 were similar to the issues raised in the companion appeal No. 4241 and that if the court affirmed the decision of the board in that appeal as to the claims there involved, it likewise should affirm the decision of the board as to said claims 22 to 26, inclusive, involved in this appeal. In the said companion appeal, decided concurrently herewith, In re Land, 109 F.2d 251, 27 C.C.P.A., Patents, ——, we affirmed the decision of the board in the rejection of the claims there involved. This leaves for consideration here claims 3, 8, 12, 13, 14, 15, 18 and 21. Of these, claims 3, 12 and 15 are regarded as illustrative and follow:

"3. An automobile headlight or the like comprising a light source, a reflector, and means, comprising a suspension of optically oriented birefringent particles in a light transmitting medium having an index of refraction for light vibrating in a predetermined direction matching substantially the index of said particles for said vibrations, interposed in the path of light rays reflected therefrom and adapted to transmit a portion of every ray traversing said means so as to provide a substantially specular non-diffused beam to form the hot spot and adapted to transmit the remaining portion of every such ray in a manner to provide a horizontally diffused beam so propagated as to illuminate the roadway on each side of the hot spot."

"12. In an automobile headlight or the like, a sheet-like suspension of oriented, needle-like, birefringent particles in an isotropic medium, the index of refraction of which matches one of the indices of refraction of the particles, said sheet-like suspension being adapted to resolve the rays emitted by said headlight into two components, one a substantially specular, non-diffused, plane-polarized beam vibrating in a direction at right angles to the direction of orientation of the needle axes of said crystals, and the other a beam diffused in the direction of vibration of said first-mentioned beam, the orientation of said crystals being such that said diffused beam is diffused in a substantially horizontal direction only."

"15. In combination, a headlight for automotive vehicles and the like comprising means comprising a suspension of needle-like birefringent particles in a transparent medium having an index of refraction matching the index of said particles for light vibrating in a predetermined direction, said suspension being adapted with a light source and a reflector to project a substantially non-diffused, polarized beam of light comprising a portion of all rays reflected from said reflector and transmitted by said suspension for forming the hot spot, and adapted to transmit a horizontally diffused beam comprising the remaining portion of each of said rays for illuminating the sides of the roadway, and a viewing visor comprising a light-polarizing element positioned to substantially block so much of the beam forming the hot spot as impinges thereon."

The references relied upon are:

Short, 1,733,915, October 29, 1929.

Cooke (Br.), 365,082, January 13, 1932.

Land, 2,031,045, February 18, 1936.

Claims 3, 8, 15, 18 and 21 were rejected as being drawn to an old combination of elements disclosed by either Land or Short. Claims 12, 13 and 14 were rejected as being unpatentable over the claims in applicant's copending application 72,501 (which matured into patent No. 2,123,901 on July 19, 1938) in view of the British patent to Cooke. In view of the concession hereinbefore stated as to claims 22 to 26, inclusive, the two groups of claims last above referred to are the only ones which require consideration and discussion here. As to these two groups of claims, the Board of Appeals agreed with the examiner on their rejection and the grounds therefor.

The alleged invention is described and the relation of the applications with which we are here concerned is aptly stated in the decision of the board. We quote:

"The claims on appeal are directed to an automobile headlight or to a system of illumination intended for use with automobiles, which involves the use on the headlight of a polarizing screen of such a character that the rays of light from a suitable source, directed to the polarizing screen by a suitable reflector, will be polarized and thus divided into two beams, one of which may be projected forwardly along the road as a substantially specular,

non-diffused beam and the other of which will be horizontally diffused so as to illuminate the roadway at each side of the area illuminated by the beam first referred to.

"In the application as filed several different expedients for producing polarized light of the character referred to have been disclosed. The preferred arrangement involves the use of birefringent crystals disposed in a suspending medium of isotropic form and having an index of refraction corresponding to that of one of the indices of the crystals. When such a combination is used, horizontal diffusion may be produced if the crystals be needle- or rod-shaped and they be oriented vertically as set forth in the paragraph beginning in line 23, page 7 of the brief. In using a headlight equipped with polarizing means such as above described, other automobiles should be equipped with a viewing screen which will exclude a part, at least, of the polarized light, preferably the specular beam which forms the hot spot projected by the headlight.

"This application is a continuation-in-part of application No. 72,501, which has now become patent No. 2,123,901. In the patent a polarizing screen such as is here employed is described and claimed, but without reference to any particular use. The patent discloses its utility for automobile lighting systems, but no claim to this particular use appears in the patent.

"A related patent, 2,123,902, shows a similar screen and also contains claims to a light polarizer which might be used in the system of the present application but, as in the case x first discussed, the claims of the patent are not directed to any particular use."

As to the first group of claims—3, 8, 15, 18 and 21—which were rejected as being drawn to an old combination of elements disclosed by either Land or Short, the examiner stated:

"As stated in the Office action of March 19, 1937:

"'The light source and reflector of applicant act in the alleged new combination in the same manner as the references because it is immaterial to the action of the light source and reflector what polarizing means are used." Applicant discloses a polarizer per se different from those of the references. Claims to that polarizer as an article have already been presented in applicant's copending applications Serial Nos. 72,501 and 83,040, the latter allowed Oct. 25, 1937. The instant case involves the use of that new polarizer in the old assemblage. Use alone is not patentable. The introduction of applicant's new polarizer into the assemblage must create a new combination to make the same patentable and it is felt that here no unobvious result is obtained from the substitution. Applicant argues that his polarizer provides two beams one for illumination of the distant road and one for illumination of the road near the car. But applicant is not the first to provide two beams for that purpose. Short states on page 3, lines 13 to 20 that:

"'If desired, however, these reflected rays may be directed laterally and downward toward the side of the road so as to be used for local illumination while the transmitted polarized rays of light 2 may be directed ahead of the vehicle along the road in the case of automobile headlights, for example.'

"Whether the local beam is a diffused beam or not is wholly immaterial to the assemblage and is a function of applicant's specific polarizer. The new polarizing element, moreover, could be used with many light sources."

The board did not discuss the claims separately, but in affirming the decision of the examiner said in part:

"Appellant is not the first to propose the use of polarized light for automobile lighting systems. The patent to Short, 1,-733,915, discloses an automobile headlight equipped with polarizing means intended to produce an illumination effect of substantially the same character as is set forth in the claims on appeal. The patent states that any suitable light-polarizing devices may be used for the stated purpose but expresses a preference for a polarizer made up from multiple thicknesses of glass. Reference is also made to the use of special forms of prisms or crystals or compositions for the same use. The patent also discloses the use of viewing screens comprising polarizing prisms or crystals of various types. * * *

"The British patent to Cooke and a prior patent to Land, 2,031,045, also broadly disclose the use of polarizing screens in connection with automobile headlights for the purpose of appropriately modifying the projected rays of light.

"It is the examiner's view with respect to certain of the claims, at least, that they involve an old combination in view of the-

art last above discussed. With respect to others, it is his view that they involve a mere substitution or mere obvious use of polarizing means such as has been patented to appellant in the patents first above discussed in old illuminating systems. It seems to us that these grounds of rejection are sound."

We are in agreement with the conclusion reached by the tribunals as to this group of claims on the ground above assigned. The question presented here as to this group of claims is substantially the one presented in the companion appeal above referred to. The alleged invention which appellant seeks to cover by these claims is expressed in the form of combination claims which, obviously, are for old combinations. His allowed claims, which have now ripened into a patent, cover the polarizer per se, and we agree with the tribunals that it is not inventive to put appellant's polarizer to the new use stated or to use it as the claims require in an old assembly.

■ As to the second group of claims— 12, 13 and 14—which were rejected as being unpatentable over the allowed claims of applicant's copending application in view of Cooke, we think our views are quite fully expressed in the decision of the companion appeal. A reading of these claims discloses that they relate to the same invention and are of the same scope as are the claims in applicant's said copending application which stood allowed when this group of three claims was rejected. The board, in covering this phase of the examiner's rejection, stated: "Appellant urges that in so far as his prior patents are concerned, they were copending with the present application and therefore present solely a qustion of double patenting. It is urged, moreover, that inasmuch as there is no overlapping of claims, there is no double patenting and hence no obstacle to the grant of a further patent. We think it well settled that the grant of more than one patent requires a corresponding number of inventions. If the subject matter covered by the second patent is noninventive over that covered by the first patent, even though the two be copending, the second patent should not be granted. * * *"

In denying a petition for rehearing, the board further stated:

"In the present case the claims on appeal might well be patentable over the claims presented in the prior patents in the absence of other art. To this extent the present case differs from those referred to by petitioner. The additional art here relied upon clearly shows that it was old to use polarizing screens capable of producing a very similar functional effect in the same relationship. It seems to us that it follows that the advance in the art made by petitioner was in the screen per se and not in the particular use of it, to which the present case is directed.

"Were the present case to be granted, we should have a situation somewhat similar to that presented in the case of Palmer Company v. Lozier, 90 F.R. 732. In that case two patents were involved, one of them claiming a pneumatic tire wherein the novelty resided in the particular breaker strip used and the other patent a fabric which corresponded to that used in the patent first referred to as a breaker strip. In that case the Court invalidated the fabric patent on the ground that it was the essential element of the tire patent without which the tire patent would not have been granted."

■ Aside from a contention which appellant has made in his brief, to which allusion will be made later, there is no contention that claims 12, 13 and 14 would be patentable if appellant's said allowed application was prior art. Under the circumstances of this case, we are of the opinion that the tribunals of the Patent Office properly considered the allowed claims in the said copending application, which later ripened into a patent, in order to determine whether or not appellant was entitled to a separate patent including claims covering certain old elements in combination with the inventive element for which latter element he had been granted claims.

■ In this case as in the companion appeal, appellant has argued at great length that the tribunals have, in rejecting the claims, used his copending application as prior art. We do not think so. It is well settled in cases like the one at bar that a copending application which ripens into a patent may be considered, not for its disclosure, but for what is claimed therein, in determining the patentability of claims presented in another application. The issue need not be belabored here. It was fully discussed in our decision of the companion appeal.

Appellant makes the following argument: "* * * We know of no rule which per-

mits the Patent Office to reject claims to a novel combination because it feels that one element of the combination is novel and the other elements old."

As in the companion appeal, appellant here uses the term "novel combination" in the sense of patent novelty in a combination claim. Appellant has not contended here or there that his combination is new in the sense that his new element of the claims cooperates in any different manner with the other elements of the claims than is disclosed in the references. Appellant states the attitude of the board as being: "You cannot get claims to this combination. We will give you only claims to the new element. If you do not present claims to the new element, then you will get no claims at all, even though the combination is novel, useful and unforeseen." This statement is very misleading. If the combination were novel, useful and unforeseen in the patent sense, there is no reason why appellant should not have the claims. However, it is our view, as it was that of the Patent Office tribunals, that there was nothing novel about the combination but that the novelty rested in the element of the claim for which appellant had received a patent.

In appellant's brief we find the following: "The present case presents the further question, not presented in the other appeal, as to whether the combination covered by the claims here on appeal is patentable over the prior art, even if applicant's two recently issued patents be considered as part of that prior art."

Appellant at the time of oral argument made substantially this same contention. We find nothing in appellant's brief which suggests a reason why the appealed claims should be allowed over the prior art if his copending applications above referred to were a part of the same, except as to his contentions to which allusion has hereinbefore been made that he has a new combination. As stated by the tribunals below, with which statement we agree, appellant has no new combination in a patentable sense. It is not disputed that appellant's combination is new in that no one else ever combined his polarizer with the other features of a headlight or lighting system. However, under the circumstances of this case, there was no novelty in a patentable sense, nor was there invention in combining his lighting element with other elements which were old, all of which remained in the same relationship and produced no new coacting result.

A number of cases have been cited by appellant, some of which were cited in the companion appeal and by us referred to in the decision thereof and which need no further discussion here. One of the cases cited in both appeals and discussed here at some length by the appellant is Traitel Marble Co. v. U. T. Hungerford Brass & Copper Co., 2 Cir., 22 F.2d 259, which is cited for the purpose of sustaining the proposition that so long as there is no double patenting and so long as the claims are for separate inventions and the applications are copending it makes no difference whether the claims are in one or more applications. The facts in that case differ from those in the case at bar. It is our view, as it was the view of the Patent Office tribunals, that the only invention made by appellant was in the polarizer per se and therefore none of the involved claims present a separate invention when the prior art and when what appellant has already received in the way of allowed claims is taken into consideration.

The case of In re Carlton, 77 F.2d 363, 22 C.C.P.A., Patents, 1223, upon which special reliance is made in this and the companion appeal was discussed in our decision there and no further comment is here necessary.

Appellant in his brief in this case as in the companion appeal has argued at length his views with reference to the effect of a requirement for division and refers to his brief in the companion appeal which states: "In re Cady, 77 F.2d 106, 22 C.C.P.A., Patents, 1190, points out that it is to be presumed that a requirement for division is made only after the claims are measured as against each other, and that the requirement implies that if invention does exist as to both the classes which are held divisible, two independent inventions would be involved and a patent should issue as to each. * * *"

This whole subject was discussed in the companion case and likewise requires no further discussion here.

For the reasons stated the decision of the Board of Appeals is affirmed.

Affirmed.